Barbara C. Welles Weather Modification Program Department of Natural Resources 1313 Sherman, Room 718 Denver, CO 80203
Dear Ms. Welles:
This is in response to your request for an attorney general's opinion on the authority of the Department of Natural Resources (DNR) to accept and spend certain federal, state and private funds for the purpose of operating an avalanche warning program.
QUESTIONS PRESENTED AND CONCLUSIONS
Your inquiry raises the following questions:
1. Is the DNR empowered by statute to operate an avalanche warning program?
 Yes, the DNR is so empowered under the Weather Modification Act of 1972 (Weather Modification Act) C.R.S. 1973, 36-20-101 to 126 (Supp. 1982).
2. Does the DNR have authority to receive certain federal, state and private moneys for an avalanche warning program?
 Yes, the DNR has such authority under section 36-20-108
of the Weather Modification Act and under the "gifts and bequests" statute, C.R.S. 1973, 33-1-105.5 (Supp. 1982).
3. Does the DNR have authority to spend certain federal, state and private moneys without legislative appropriation for an avalanche warning program?
 Yes, the DNR has such authority since such funds are either federal or custodial funds and there is a statutory basis for this activity.
ANALYSIS
In your request for an opinion, you indicate that an avalanche warning program has been operated for the past 10 years in Colorado by the United States Forest Service. This operation ceased, however, on September 30, 1983. You stated and I assume that the avalanche warning program has played a substantial role in protecting the safety and welfare of residents and tourists including ranchers, hikers, back country skiers and snowmobilers; in protecting from damage public and private property, including snowmobile trails, roads and highways; and in protecting the environment. Weather modification permits issued by the DNR have contained provisions which necessarily have depended upon avalanche information from the United States Forest Service avalanche warning program. Due to the important function served by the operation of the program, the DNR desires to assume responsibility for its continuation.
The DNR proposes to fund the avalanche warning program with certain federal, state and private moneys. The funding sources which have been identified to date include the United States Forest Service, the Federal Emergency Management Agency, the National Park Service, the Colorado Department of Highways, the Colorado Division of Parks and Outdoor Recreation, Ski Country U.S.A. and the Colorado Mountain Club. You have asked whether the DNR has statutory authority to operate an avalanche warning program and to accept and spend these federal, state and private funds for this purpose. It is my opinion that the DNR has such authority under the Weather Modification Act and under the "gifts and bequests" statute, C.R.S. 1973, 33-1-105.5 (Supp. 1982).
Authority To Operate An Avalanche Warning Program
The DNR's authority to operate an avalanche warning program is found in the Weather Modification Act. The executive director of the DNR is charged with the administration of this Act, which entails, inter alia, issuing permits for weather modification activities. C.R.S. 1973, 36-20-105, 108(1). Provisions contained in weather modification permits issued by DNR necessarily have depended upon the availability of avalanche information from the United States Forest Service avalanche warning program.[1]
The necessity for such avalanche information is based on the following statutory provisions of title 36, article 20, which direct the DNR to protect persons, property and the environment during weather modification activities: C.R.S. 1973, 36-20-102;36-20-108(2) and (5)(c); 36-20-112(1)(d) and (3)(e), (f), (h); and 36-20-117(2).
In addition to the duty to protect persons, property and the environment, under C.R.S. 1973, 36-20-108(3)(a), the executive director of the DNR also has explicit power to collect information and make studies and investigations to assist in the implementation of the Weather Modification Act. Such studies and investigation would include the operation of an avalanche warning program because information generated from such a program is essential to assuring that weather modification activities are conducted in a safe manner and have minimal adverse impacts. Because of the interrelationship between avalanches and weather modification activities, then, it is within the authority of the DNR to operate an avalanche warning program.
Authority To Receive Money To Operate An Avalanche WarningProgram
Under C.R.S. 1973, 36-20-108(8) of the Weather Modification Act, the DNR has the right to receive certain moneys for an avalanche warning program. This statute provides that, subject to any limitations imposed by law, the executive director of the DNR "may accept federal grants, private gifts, and donations from any other source" for the administration of the Weather Modification Act.[2] As discussed above, the administration of the Weather Modification Act may include the operation of an avalanche warning program. Thus, the DNR has authority to receive federal and private moneys for such a program.
Significantly, the DNR also has authority to receive private funds for an avalanche warning program under the "gifts and bequests" statute, C.R.S. 1973, 33-1-105.5 (Supp. 1982). Pursuant to subsections (1) and (2) of this statute, the department is authorized to receive private moneys for "the maintenance of parks, recreational areas, or scenic or natural areas and for related uses." Donations by private foundations such as Ski Country U.S.A. and the Colorado Mountain Club to DNR for an avalanche warning program would fall within the ambit of this statute.
In addition to the above-stated authority to receive federal and private funds, the DNR has authority to receive state funds for the operation of an avalanche warning program. Subsections (4)(b) and (8)(b) of section 36-20-108, when read together, allow the executive director of the DNR to receive state funds from public agencies of the state by entering into a contract with the appropriate state agency. Subsection (4)(b) authorizes state agencies "to contribute to and participate in weather modification" and subsection (8)(b) authorizes the executive director to contract with state agencies to use federal funds, state agency contributions, and private moneys for research and development.[3]
The DNR proposes to contract with the Division of Parks and Outdoor Recreation (DPOR) and the Department of Highways (DOH) to obtain state funds for an avalanche warning program. Just as the DNR has the right to receive said funds, the DPOR and the DOH have the power to provide said funds by means of a contract with the DNR. The DPOR possesses a statutory basis to enter into such a contract pursuant to C.R.S. 1973, 36-20-108(4)(b), which permits state agencies to contribute to and participate in weather modification, and as part of DPOR's statutory authority to use snowmobile registration fees to establish and maintain snowmobile trails. C.R.S. 1973, 33-7-105 (Supp. 1982). An avalanche warning program would assist DPOR to maintain such trails with due regard for public safety. Similarly, the DOH has authority to enter into such a contract pursuant to C.R.S. 1973,36-20-108(4)(b) and as part of DOH's statutory duty to maintain highways. C.R.S. 1973, 43-1-102(3), 43-1-105(1)(i), and 43-1-106
(Supp. 1982).
In summary, under both the Weather Modification Act and the "gifts and bequests" statute, the DNR has authority to accept certain federal, state and private moneys for the operation of an avalanche warning program. Moreover, the state agencies with which the DNR proposes to contract for the operation of an avalanche warning program have statutory authority to enter into such agreements.
Authority To Spend Money For An Avalanche WarningProgram
The DNR proposes to spend certain federal, state and private moneys without legislative appropriation for the operation of an avalanche warning program. The DNR's existing statutory authority allows such expenditure of these funds since they are either federal or custodial funds which the DNR has been specifically empowered to receive. Federal grants of money to the state, as well as custodial funds, are not subject to appropriation by the legislature since such funds are not state moneys. MacManusv. Love, 179 Colo. 218, 499 P.2d 609 (1972).
On November 16, 1982, an official attorney general's opinion was issued to James A. Stroup, state controller, regarding the types of funds which may be considered custodial funds. Under the guidelines contained in that opinion, the state and private moneys which the DNR has been given specific authority to receive and which will be used for the operation of an avalanche warning program, may properly be considered custodial funds. Significantly, these moneys will be provided from special funds which are segregated from other funds. The source of funds for the DPOR's contribution to the avalanche warning program is the Snowmobile Recreation Fund, which was created by and segregated from other funds pursuant to C.R.S. 1973, 33-7-105 (Supp. 1982). The source of funds for the DOH's contribution to the avalanche warning program is the State Highway Fund, which receives moneys from the Highway Users Tax Fund. C.R.S. 1973, 43-4-206 (Supp. 1982). These funds are segregated from other funds pursuant to C.R.S. 1973, 43-1-219. A portion of this fund is specifically made available for highway maintenance. C.R.S. 1973,43-4-206(1)(b)(V) (Supp. 1982). The source of funds for the private moneys is the Colorado Natural Resources Foundation Fund, which was created by and segregated from other funds pursuant to C.R.S. 1973, 33-1-105.5(3) and (4) (Supp. 1982).
These state and private moneys are designated by law for specific and limited purposes. The Snowmobile Recreation Fund is only to be used for the establishment and maintenance of snowmobile trails. C.R.S. 1973, 33-7-105 (Supp. 1982). The State Highway Fund is only to be used for highway purposes, which includes highway maintenance. C.R.S. 1973, 43-4-206(1)(b)(V) (Supp. 1982). The Colorado Natural Resources Foundation Fund is only to be used for natural resource purposes. C.R.S. 1973, 33-1-105.5(2) (Supp. 1982). Under C.R.S. 1973, 36-20-108(8) these state and private moneys may be used for the administration of the Weather Modification Act. As indicated above, each of the foregoing purposes is served by the operation of an avalanche warning program.
The above establishes that the state and private moneys which are to be used for an avalanche warning program are custodial funds. Because the DNR also has legislative authority to accept these, as well as the federal funds, it may spend all these funds for said purpose without legislative appropriation.
SUMMARY
The DNR is empowered to operate an avalanche warning program as an integral part of its statutory duties and responsibilities under the Weather Modification Act. Because the DNR has specific statutory authority to receive and spend certain federal, state and private moneys for the administration of the Weather Modification Act, including the operation of an avalanche warning program, it may spend these moneys for said purpose without prior legislative appropriation.
Very truly yours,
 DUANE WOODARD Attorney General
WEATHER APPROPRIATIONS GIFTS
C.R.S. 1973, 36-20-101 et seq. (Supp. 1982)
C.R.S. 1973, 33-1-105.5 (Supp. 1982)
C.R.S. 1973, 33-7-105
C.R.S. 1973, 43-1-102(3)
C.R.S. 1973, 43-1-106
C.R.S. 1973, 43-4-206 (Supp. 1982)
C.R.S. 1973, 43-1-219
C.R.S. 1973, 43-1-111 (Supp. 1982)
NATURAL RESOURCES Parks Outdoor Recreation HIGHWAYS, DEPT. OF
The DNR is empowered to operate an avalanche warning program as an integral part of its statutory duties and responsibilities under the Weather Modification Act. Because the DNR has specific statutory authority to receive and spend certain federal, state and private moneys for the administration of the Weather Modification Act, including the operation of an avalanche warning program, it may spend these moneys for said purpose without prior legislative appropriation.
[1] A typical weather modification permit has stated:
 The applicant shall also suspend / cloud / seeding operations where one or more of the following occurrences take place:
 a. When weather forecasts or actual storms are producing unusually heavy precipitation amounts that could possibly contribute to avalanches or severe weather conditions in the project area.
 b. When the United States Forest Service Rocky Mountain Avalanche Forecast Center issues the warning "all travelers should use extreme caution" in the project area.
 c. When the Executive Director specifies that seeding should be suspended. The Applicant shall consult with the U.S. Forest Service Rocky Mountain Avalanche Forecast Center prior to seeding and inform the Colorado State Highway Patrol (Denver Dispatch Office) when seeding occurs.
In the Matter of the Application of Western Weather Consultants, Inc., Decision and Permit Renewal, 10-29-82. Also, reports on weather modification activities must be sent "to the Colorado State Patrol and the Forest Service Avalanche Forecast Center at least twice a month, summarizing the project's activities and status." Id.
[2] There are no limitations on the acceptance of moneys for the operation of an avalanche warning program.
[3] The executive director's use of this money may be restricted or subject to any limitations provided by law. C.R.S. 1973, 36-20-108(8). To date, no restrictions or limitations have been placed on the use of these moneys.